## TOWAMENCIN ROAD.

Where a report of viewers is set aside for informality, the case is not within a rule of court, which provides that when proceedings for a road have failed, another application for such road shall not be acted on for one year from the sessions at which such road was finally rejected.

Such a rule of court is lawful.

CERTIORARI to the Quarter Sessions of Montgomery.

*March* 27. The case is fully stated in the opinion of this court,

*Thomas*, for appellant, contended that the rule was in conflict with the act of 1836 (Roads); but if this were not so, the road was not finally rejected when the proceedings had been set aside for informality merely.

*April* 2.   BELL, J.—On the 22d of February, 1848, the report of the first set of viewers was filed, and on the 14th of the succeeding April, it was set aside by the court "for defect in it as well as in the draft." The exceptions filed show the defect to have been in the omission to specify the improvements through which the projected road, when opened, would run.   At May sessions, 1848, a new petition was presented, praying for a road between the same points; and on the 15th of May, another jury of view was appointed, who reported a road to August sessions.   On the 21st of August, the road, as reported, was approved, and on the same day exceptions were filed, to the effect that the road reported was the same as that recommended by the first view, and that one year had not elapsed since the former report was set aside.   Upon this ground, the Court of Quarter Sessions, on the 16th of January, 1849, set aside the second report.   This order is based on the following rule, adopted by the Courts of Quarter Sessions of Bucks and Montgomery counties: "When a procedure for a road or bridge has failed, another application for such contemplated road or bridge shall not be acted upon for one year from the sessions at which such road or bridge was finally rejected." This rule is not peculiar to the Seventh Judicial District.   It, or something similar, obtains in other districts, and the object of it is to protect the community and the courts from being harassed by never-ending, still-beginning controversies, in respect to projected roads.   Every one who has had any experience of this subject, knows the pertinacity with which a contest of this character is apt to be carried on. Whole neighbourhoods become enlisted in the question, and dividing into parties, as the promoters and opponents of a projected road, passion frequently usurps the place of reason, and defeat is regarded but as marking the point at which reagitation is to be commenced.   Taking advantage of the road-law, which directs the Courts of Quarter Sessions, on being petitioned, to grant a view for a road, as often as may be needful, it was no uncommon thing, before the adoption of the rule, for parties interested in a contemplated highway, to renew their petition immediately after the conclusion of a long and vexatious contest, running perhaps through successive juries of view, review, and re-review, and sometimes

many more heaped upon these, where some of the intermediate reports were set aside for some defect in the action of the viewers. Thus the controversy was never brought to an end, even for a limited period, and disputes about roads were in danger of becoming interminable. To remedy this evil, the courts, in the exercise of a perfect right of regulating the practice under the act of Assembly, adopted the rule in question. But it was not intended to interfere with or impede the right of the petitioners to have the advantage of view, review, and re-review, before they could be concluded. View and review is of right, and where these disagree, it has grown into a practice to grant, as of course, a re-review also. The propriety of granting or refusing the prayer for a road is generally thought not to be ascertained until, at least, two juries of view concur in opinion on the subject; and it sometimes happens that before this is attained, three, four or more views may be appointed. The evil consisted in the abuse of this privilege, and the object of the rule was to afford breathing-time after a road or bridge "was finally rejected." But it cannot be said to be finally rejected, merely by setting aside, for some technical reason, the report of viewers. This does not touch the merits. The terms of the rule of court are only satisfied by the regular progression of the proceedings through all the stages authorized by the acts of Assembly and the practice under them. When the merits of the proposed thoroughfare have been examined and reported upon by succeeding viewers, and disapproved by them, with the concurrence of the court, it may be said to be "finally rejected," but not before. Indeed, so far as my experience extends, the practice has been, where a report is set aside on exceptions touching merely the mode in which the viewers have discharged their duties, technically considered, to appoint a new view on the old petition. This practice springs from the habit of the courts to regard a report set aside, on technical grounds, as a mere nullity: to treat the case as though the rejected report had never existed. It would, indeed, in many cases, involve great hardship and injustice to tie up a petitioner's hands merely because the viewers had omitted to specify which of their number attended; to designate the improvements through which the proposed road would run, or that the viewers had been sworn. And yet these objections furnish a ground for setting aside a report of viewers, without, in the slightest degree, involving the merits of the road.

Although we are in the habit of paying much respect to the construction put by a court upon its own rules, we cannot bring

R 2

ourselves to the conclusion, that either the language or the spirit of the rule under consideration justifies the conclusion at which the court below arrived.    Applied in a case of successive views and reviews, rejecting a proposed road, the rule is a reasonable one, in practice highly salutary; but it does not embrace a case like the present, for, in our opinion, an order setting aside a report for a neglect to set forth the improvements along the route of the road, or similar defect, cannot be said to be a final rejection of it.

I may add, that, in a rapidly improving district, where new roads are frequently needed and called for, these merely formal objections sometimes become extremely vexatious.    It often occurs that, after a long and expensive course of investigation, it proves to be labour lost, from the setting aside of the final report on some ground of formal omission by the viewers.    In a neighbouring judicial circuit, this grew to such a head of inconvenience, that the courts adopted the practice of sending back the report for amendment or correction, where the exception did not touch merits, and the practice has proved to be preventive of much trouble, vexation, and expense.    From what has been said, it will be perceived we do not agree with the Court of Quarter Sessions as to the meaning of its rule.

Wherefore, it is ordered, that the

> Order of the said Court of Quarter Sessions, setting aside the said report of the jury of view, be reversed, and the record remitted to the said court for further proceedings.